FILED

Scott Hochstetter
5419 HOLLYWOOD BLVD
STE C 137
Los Angeles, CA 90027
630-465-3557
Theloreofdoa@gmail.com
Pro Se

2026 JUL 30  PM 2: 29

CLERK U.S. DISTRICT COURT
CENTRAL DIST OF CAL
LOS ANGELES

BY: _____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SCOTT HOCHSTETTER,

Plaintiff,

v.

CITY OF LOS ANGELES;
DAVID DOYLE, in his individual and official capacities;
ANNABELLE EUBANK, in her individual and official capacities;
ERICA EMETERIO, in her individual and official capacities;
DOUGLASS HALL, in his individual and official capacities;
PATRICK ALUOTTO, in his individual and official capacities;
HEATHER MATA, in her individual and official capacities;
JESSE RUBALCAVA, in his individual and official capacities;
RICARDO SALAZAR, in his individual and official capacities;
RAYMOND VALOIS, in his individual and official capacities;
CHRISTOPHER VELASCO, in his individual and official capacities;
JAMES RICHARDSON in his individual and official capacities;
CHURCH OF SCIENTOLOGY CELEBRITY CENTRE INTERNATIONAL;
AARON NICOLARSON in his individual and official capacity;
and DOES 1 through 30, inclusive,

Defendants.

Case #2:26-cv-01630  DOC KS

1. Violation of the Fourth Amendment
42 U.S.C. § 1983 – Unlawful Arrest Pursuant to Private Person's Arrest (February 16, 2024)

2. Violation of the Fourth Amendment
42 U.S.C. § 1983 – Unlawful Re-Arrest, Continued Seizure, False Imprisonment, and Unreasonable Detention (February 16–22, 2024)

3. Violation of the Fourth Amendment
42 U.S.C. § 1983 – Unreasonable Search and Seizure of Plaintiff's Vehicle and Property

4. Violation of the First Amendment
42 U.S.C. § 1983 – Retaliation for Protected Speech and Expressive Activity

5. Violation of the First and Fourth Amendments
42 U.S.C. § 1983 – Unlawful Arrest, Retaliatory Arrest, and Unreasonable Seizure (May 25, 2024)

6. Violation of the Fourteenth Amendment
42 U.S.C. § 1983 – Denial of Equal Protection Through Selective Enforcement and Selective

Non-Enforcement

7. Municipal Liability Under 42 U.S.C. § 1983 (Monell) Against Defendant City of Los Angeles

8. Declaratory Relief 28 U.S.C. §§ 2201–2202

9. Prospective Injunctive Relief 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202

**DEMAND FOR JURY TRIAL**

## SECOND AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

## (42 U.S.C. § 1983)

## I. INTRODUCTION

1. PLAINTIFF Scott Thomas Hochstetter ("PLAINTIFF") brings this action pursuant to 42 U.S.C. § 1983 to redress deprivations of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, arising from Defendants' pattern of retaliatory, discriminatory, and unlawful law enforcement actions against PLAINTIFF.

2. This action arises from the conduct of officers assigned to the Los Angeles Police Department ("LAPD") Hollywood Division in response to PLAINTIFF's protected First Amendment activity during public demonstrations outside the Church of

Scientology Celebrity Centre ("CSCC") and LA POUBELLE Bistro & Bar ("LA POUBELLE") in Hollywood, California.

3. PLAINTIFF peacefully protested matters of public concern, including Scientology, the criminal prosecution of Danny Masterson, and issues of public safety and accountability. PLAINTIFF also livestreamed many of these demonstrations to a worldwide audience.

4. PLAINTIFF alleges that Hollywood Division officers provided preferential law-enforcement services to individuals associated with the Church of Scientology and LA POUBELLE by selectively accepting private-person arrests under California Penal Code § 837, selectively investigating reported crimes, declining to review readily available video evidence, and enforcing the law differently based on the identity and viewpoint of the complaining party.

5. Prior to PLAINTIFF's arrest on February 16, 2024, PLAINTIFF and other Scientology protesters repeatedly reported batteries, assaults, thefts, threats, and other criminal conduct. PLAINTIFF alleges that Hollywood Division officers routinely declined to investigate those complaints, discouraged or refused private-person arrest requests submitted by protesters, and failed to preserve or review readily available evidence.

6. On February 16, 2024, four Scientology protesters—including PLAINTIFF, DANIEL VILLEDA GONZALEZ ("GONZALEZ"), KAMRIN IVONE ("IVONE"), and JASIAH ADLER ("ADLER")—were arrested by Hollywood Division officers after two bar patrons initiated separate Private Person's Arrests pursuant to California Penal Code § 837 arising from protest activity outside LA POUBELLE.

7. Defendants then improperly escalated misdemeanor battery allegations involving PLAINTIFF, GONZALEZ, and IVONE into a felony conspiracy investigation under California Penal Code § 182 and §22810 without probable cause, resulting in the unlawful seizure of PLAINTIFF's person and property.

8. Following the February 16, 2024 arrests, Hollywood Division continued investigating PLAINTIFF's protected protest activity through multiple hate-crime investigations on or about March 8, March 9, and March 12, 2024, including investigations arising from PLAINTIFF's protest message that "Scientology is a cult."

9. The March 8 and March 9 hate-crime investigations ultimately resulted in two misdemeanor charges under California Penal Code § 415 and two misdemeanor charges under Los Angeles Municipal Code § 41.57(a). On or about June 2026, on the eve of trial, all four charges were dismissed in the interest of justice.

10. PLAINTIFF was arrested again by Hollywood Division on May 25th, 2024 via a private persons arrest that was not on the docket and then months later in January of 2025 the arrest transformed into a PC 415 and LA 41.57(a) in connection with the same protest activity.

11. PLAINTIFF alleges that this arrest, together with the preceding investigations and enforcement actions, formed part of a continuing pattern of retaliation, selective enforcement, and unequal police protection.

12. PLAINTIFF alleges that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments and that these violations were caused by policies, customs, practices, failures to train or supervise, and ratification by the City of Los Angeles.

13.    PLAINTIFF seeks compensatory damages, punitive damages against the individual Defendants, declaratory relief, injunctive relief, costs, and any further relief the Court deems just and proper.

## II. VENUE AND JURISDICTION

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) and (4) because this action seeks redress for the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to this action occurred within the Central District of California.

16.    This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983, and the First, Fourth, and Fourteenth Amendments to the United States Constitution, including protections for freedom of speech and other rights secured by those Amendments.

17.    This Court has authority to award declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and to grant injunctive relief pursuant to Federal Rule of Civil Procedure 65.

18.    At all relevant times, DEFENDANTS acted under color of the statutes, ordinances, regulations, customs, and usages of the State of California and the City of Los Angeles within the meaning of 42 U.S.C. § 1983

## III. PARTIES

19.   PLAINTIFF Scott Thomas Hochstetter ("PLAINTIFF") is a resident of the State of California. At all relevant times, PLAINTIFF engaged in constitutionally protected speech, expressive activity, and peaceful protests in Hollywood, California.

20.   Defendant CITY OF LOS ANGELES ("CITY") is a municipal corporation organized under the laws of the State of California. At all relevant times, the CITY owned, operated, managed, supervised, and was responsible for the Los Angeles Police Department ("LAPD"), including its officers, employees, policies, customs, practices, training, and supervision.

21.   Defendant DAVID DOYLE ("DOYLE") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division.

22.   Defendant ANNABELLE EUBANK ("EUBANK") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division.

23.   Defendant ERICA EMETERIO ("EMETERIO") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division.

24.   Defendant DOUGLASS HALL ("HALL") was, at all relevant times, a sworn police officer and detective employed by the LAPD and assigned to Hollywood Division.

25.   Defendant PATRICK ALUOTTO ("DEFENDANT ALUOTTO") was, at all relevant times, a sworn police officer and detective employed by the LAPD and assigned to Hollywood Division.

26. Defendant HEATHER MATA ("MATA") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division.

27. Defendant JESSE RUBALCAVA ("RUBALCAVA") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division.

28. Defendant RICARDO SALAZAR ("SALAZAR") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to the Hollywood Division.

29. Defendant RAYMOND VALOIS ("VALOIS") was, at all relevant times, the Commanding Officer of the LAPD Communications Division.

30. Defendant CHRISTOPHER VELASCO ("VELASCO") was, at all relevant times, a sworn police officer employed by the LAPD and assigned to Hollywood Division;

31. Defendant JAMES RICHARDSON ("RICHARDSON") in his official capacity as an LAPD Clergy Council, and his official capacity of Hollywood CPAB Member #00898, and in his individual capacity;

32. Defendant CHURCH OF SCIENTOLOGY CELEBRITY CENTRE INTERNATIONAL ("CSCC") is, and at all relevant times a California nonprofit religious corporation doing business in Los Angeles County, California;

33. AARON NICOLARSON in his individual and official capacity as a Security Guard for Celebrity Centre International;

34. PLAINTIFF is unaware of the true names and capacities of Defendants sued herein as DOES 1 THROUGH 30, inclusive, and therefore sues these Defendants by fictitious

names. PLAINTIFF will amend this Complaint to allege their true names and capacities when they are ascertained.

35.     At all relevant times, each DEFENDANT acted under color of the laws, customs, and usages of the State of California and within the course and scope of his or her employment with the CITY OF LOS ANGELES. PLAINTIFF is informed and believes, and thereon alleges, that each DEFENDANT personally participated in, directed, authorized, approved, acquiesced in, or ratified the acts and omissions alleged herein.

## IV. FACTUAL ALLEGATIONS

### A. PLAINTIFF's Protected First Amendment Activity

36.     PLAINTIFF is an independent journalist, livestreamer, and First Amendment activist who regularly documents and reports on matters of public concern through livestreams, video recordings, and peaceful public demonstrations.

37.     Beginning on or about January 2024, PLAINTIFF engaged in peaceful expressive activity on the public sidewalks surrounding the CSCC, LA POUBELLE, and other public locations within the jurisdiction of the LAPD Hollywood Division.

38.     The demonstrations concerned matters of significant public interest, including the Church of Scientology, the criminal prosecution of Danny Masterson, allegations of misconduct involving Scientology, public corruption, police accountability, and the constitutional rights of protesters.

39.    PLAINTIFF's demonstrations included displaying signs and messages, recording police activity, livestreaming interactions with public officials and private individuals, speaking with members of the public, and expressing opinions regarding Scientology and related matters.

40.    PLAINTIFF's livestreams were publicly available and viewed by audiences throughout the United States and internationally. At all relevant times, PLAINTIFF remained on public sidewalks and other traditional public forums while engaging in speech on matters of public concern protected by the First Amendment.

**B. Hollywood Division's Treatment of Scientology Protesters Prior to February 16, 2024**

41.    Beginning on or about January 2024, PLAINTIFF and other individuals regularly conducted peaceful demonstrations on the public sidewalks surrounding CSCC and LA POUBELLE.

42.    During this period, PLAINTIFF and other protesters were repeatedly subjected to physical confrontations, threats, thefts, vandalism, and other alleged criminal conduct by individuals associated with, or supportive of, the Church of Scientology and LA POUBELLE, and repeatedly reported those incidents to the LAPD.

43.    PLAINTIFF and other protesters repeatedly requested police assistance from officers assigned to LAPD Hollywood Division and, on multiple occasions, sought to initiate Private Persons' Arrests pursuant to California Penal Code § 837 based on alleged unlawful conduct witnessed by responding officers or documented by witness statements and video evidence.

44.    PLAINTIFF and other protesters repeatedly requested police assistance from officers assigned to LAPD Hollywood Division and, on multiple occasions, sought to initiate Private Persons' Arrests pursuant to California Penal Code § 837 based on alleged unlawful conduct witnessed by responding officers or documented by witness statements and video evidence.

45.    By contrast, Hollywood Division officers routinely accepted complaints made by individuals associated with the Church of Scientology and LA POUBELLE, investigated those complaints, accepted Private Persons' Arrests, and took enforcement action arising from those complaints.

46.    PLAINTIFF further alleges that Hollywood Division officers repeatedly responded to complaints made by Scientology-affiliated individuals and LA POUBELLE personnel in a materially different manner than they responded to complaints made by PLAINTIFF and other protesters, even though the incidents frequently occurred at the same locations, involved many of the same individuals, and arose from the same ongoing demonstrations.

47.    PLAINTIFF alleges that the foregoing events preceded February 16, 2024, and provide factual background and context for the constitutional violations alleged in this action.

**C. Documented Incidents Preceding Plaintiff's February 16, 2024 Arrest**

48.    The allegations in this section are included solely as factual background and context for the constitutional violations alleged in this Complaint and are not asserted as independent claims for relief unless expressly stated.

49.    Prior to PLAINTIFF's arrest on February 16, 2024, Hollywood Division officers repeatedly responded to incidents involving Scientology protesters, accepted or declined Private Person's Arrests, investigated complaints, and documented numerous interactions involving many of the same protesters, locations, and officers involved in this action.

50.    The following incidents are representative examples of those prior interactions and provide context for the claims asserted in this action.

51.    On or about December 4, 2023: Hollywood Division officers declined a protesters request for a Private Person's Arrest after another individual allegedly struck his cellular telephone.

52.    On or about December 4, 2023: Hollywood Division officers accepted a Private Person's Arrest initiated by a Scientology security guard involving a protester after the protester allegedly brushed against the guard while dancing on the public sidewalk. DEFENDANTS EMETERIO and SALAZAR responded to the incident.

53.    On or about January 5, 2024: A man was arrested following an alleged incident involving a protester at the Scientology Testing Center.  He was not prosecuted.

54.    On or about January 14, 2024: a protester was cuffed following reports that he possessed a firearm near the Scientology Testing Center.

55.    On or about January 14, 2024: a protester was detained following a bomb-threat report at the Scientology Blue Building.

56.   On or about January 16, 2024: A protester was again detained following reports that he possessed a firearm.

57.   On or about January 19, 2024: A protester was arrested, handcuffed, and secured to a metal bench at the Hollywood Division police station for approximately four hours following an incident involving an individual near the Scientology Testing Center. During the incident, the individual allegedly released his dog toward the protester and allegedly struck the protester with a walking cane.

58.   The individual's dog had allegedly been involved in two prior incidents at the Scientology building in which two individuals were reportedly bitten.

59.   An LAPD Hollywood Division officer allegedly advised the protester that if he pursued criminal charges against the individual, the protester could face felony stalking charges.

60.   The individual was subsequently arrested in connection with the incident; however, upon information and belief, no criminal charges were pursued by LAPD.

61.   This individual is currently facing murder charges in Los Angeles after his dog allegedly attacked another man who he is accused of fatally stabbing.

62.   On or about January 28, 2024  PLAINTIFF became the subject of an investigation concerning allegations of invasion of privacy arising from his protest activity and expressive conduct.

63.   On or about February 2, 2024 a protester's phone was struck near LA POUBELLE.

64. On or about February 7, 2024: PLAINTIFF became the subject of an investigation concerning allegations of invasion of privacy arising from his protest activity.

65. On or about February 9, 2024: PLAINTIFF became the subject of another complaint resulting in an investigation initiated by Scientology security personnel.

66. On or about February 9, 2024 DEFENDANT DOYLE declined a protester's request for a Private Person's Arrest after the protester reported that a LA POUBELLE employee reached through the tent and made unwanted physical contact with her.

67. On or about February 11, 2024: PLAINTIFF was detained by law enforcement officers who displayed firearms during an incident near the Scientology Building.

68. On or about February 13, 2024: Daniel Villeda Gonzalez ("GONZALEZ") reported that his cellular telephone was struck during a protest.

69. PLAINTIFF alleges that Hollywood Division officers declined to accept a Private Person's Arrest despite the availability of video evidence documenting the reported incident. During the same response, a Hollywood Division officer allegedly made physical contact with another protester.

70. On or about February 13, 2024: During ongoing protest activity outside LA POUBELLE, Hollywood Division officers escorted LA POUBELLE owner Françoise Koster from the restaurant.

71. A LA POUBELLE patron struck a protester's cellular telephone after objecting to being filmed. Despite the reported conduct, PLAINTIFF alleges that Hollywood Division officers declined to make an arrest.

**D. February 16, 2024 – The Arrests at LA POUBELLE**

72.     Numerous LAPD Hollywood Division officers converged on LA POUBELLE Bistro & Bar during ongoing protest activity and, pursuant to a coordinated operational response, arrested four protesters following Private Person's Arrests arising from the incident. PLAINTIFF alleges that the number of officers involved and manner in which the arrests were executed constituted a significant show of police force.

**ARREST OF JASIAH ADLER ON A PRIVATE PERSON'S ARREST**

73.     On or about February 16, 2024, On or about February 16, 2024, LAPD officers and DOE Defendants effected the felony arrest of JASIAH ADLER ("ADLER") in front of LA POUBELLE.

74.     During the arrest, LAPD officers informed nearby picketers that ADLER was being arrested for an incident unrelated to the ongoing protest activity.

75.     After the arrest, Detective Patrick DEFENDANT ALUOTTO allegedly told ADLER, "This is what happens when you protest Scientology."

76.     The felony arrest was based upon allegations made by Patrick Perry ("PERRY"), who had previously been involved in multiple incidents with Scientology protesters, including alleged physical confrontations on separate occasions.

77.     ADLER remained in custody for approximately seven days before the charges against him were dismissed at the preliminary hearing.

## ARREST OF DANIEL VILLEDA GONZALEZ AND KAMRIN IVONE

78. On or about February 16, 2024 two LA POUBELLE patrons, Amelia Davis and Dominique Thaysen exited the tent on the public sidewalk stating "You all are fucking weirdos" and slapped picketer GONZALEZ's phone.

79. After Amelia Davis allegedly struck GONZALEZ'S cellular telephone, Amelia Davis and Dominique Thaysen attempted to leave the scene before GONZALEZ could obtain identifying information necessary to accurately identify them in a police report.

80. As GONZALEZ attempted to obtain identifying information, Amelia Davis allegedly struck GONZALEZ'S cellular telephone a second time, causing the phone to fall to the ground.

81. GONZALEZ discharged pepper spray after Amelia Davis allegedly struck his cellular telephone and he perceived an ongoing threat of further physical contact.

82. Following the incident, Amelia Davis and Dominique Thaysen proceeded to their vehicle while exhibiting signs of possible impairment.

83. As Amelia Davis and Dominique Thaysen attempted to leave the scene, the driver, Dominique Thaysen, struck a parked vehicle.

84. Amelia Davis and Dominique Thaysen then went to the LAPD Hollywood Division and reported the incident. Both subsequently initiated Private Person's Arrests pursuant to California Penal Code § 837 against GONZALEZ and IVONE.

85.   Before the report was completed, DEFENDANTS MATA and RUBALCAVA were notified and responded to the LAPD Hollywood Division station to accept and process the Private Person's Arrest requests made by Amelia Davis and Dominique Thaysen arising from allegations of California Penal Code § 242 battery.

86.   DEFENDANTS MATA, RUBALCAVA, DEFENDANT ALUOTTO and other DOE officers met behind LA POUBELLE and coordinated a tactical plan to effect the arrests of GONZALEZ and IVONE based on PPAs filed by AMELIA DAVIS AND DOMINIQUE THAYSEN arising from the incidents in which GONZALEZ's and IVONE's phones were struck.

**ARREST OF PLAINTIFF**

87.   At the time of the incident, JORDAN ROLLOLAZO ("ROLLOLAZO") was observed smoking what appeared to be marijuana on the public sidewalk immediately adjacent to the entrance of LA POUBELLE.

88.   PLAINTIFF alleges that the conduct described above was inconsistent with applicable California laws restricting smoking in public places and near building entrances, including California Health and Safety Code § 11362.3 and Government Code § 7597.

89.   IVONE approached ROLLOLAZO who was near female picketers and informed him that he had previously explained the purpose of the demonstration.

90.   ROLLOLAZO then stepped forward and allegedly struck IVONE'S cellular telephone, causing it to fall to the ground and break the screen.

91. ROLLOLAZO then grabbed IVONE'S chest with both hands and pushed IVONE into the side of a vehicle behind him, as captured on video.

92. At the same time, PLAINTIFF observed ROLLOLAZO engage in increasingly aggressive conduct, including blowing smoke toward two female protesters, striking IVONE'S cellular telephone, and lunging toward IVONE.

93. PLAINTIFF moved toward IVONE and attempted to restrain ROLLOLAZO.

94. As PLAINTIFF attempted to restrain ROLLOLAZO from behind, an unknown individual shoved both PLAINTIFF and ROLLOLAZO away from IVONE and into the tent located in front of LA POUBELLE

95. PLAINTIFF tripped on the tent located on the public sidewalk and fell backward with ROLLOLAZO, causing PLAINTIFF to bear the impact of the fall.

96. As PLAINTIFF and ROLLOLAZO fell to the ground, GONZALEZ discharged pepper spray, which struck both ROLLOLAZO and PLAINTIFF in the face.

97. ROLLOLAZO stood up and began yelling at PLAINTIFF.  PLAINTIFF took several steps backward in an effort to create distance and deescalate the situation as ROLLOLAZO continued stepping toward him.

98. LA POUBELLE's security guard, DERVONNE CHRISTOPHER ("CHRISTOPHER"), grabbed ROLLOLAZO and attempted to restrain and calm him.

99. ROLLOLAZO then threw what appeared to be a marijuana joint toward IVONE and moved directly in front of another picketer, positioning himself close to her face.

100. ROLLOLAZO took his shirt off and threw it toward PLAINTIFF.

101. ROLLOLAZO then challenged PLAINTIFF to step around the corner to "finish this."

102. At approximately 22:07, according to the CAD call incident report produced to PLAINTIFF, a call for service was generated regarding a reported violation of California Penal Code § 242 battery at LA POUBELLE

103. The CAD Call Incident Report for this event contained special instructions entered by DEFENDANT VALOIS in his capacity as Commanding Officer of LAPD Communications Division.

104. The CAD Call Incident Report produced to PLAINTIFF contained special instructions entered by DEFENDANT VALOIS.

105. The special instructions identified the location as the Church of Scientology Celebrity Centre and stated, in relevant part: *"HAVE SUPERVISOR RESPOND WITH UNIT; Title:638 Auth.Empl:Capt 3 Valois 30129 Type:SPECIAL INSTRUCTIONS Description:Special Instructions Proximity:Inner Location:5930 FRANKLIN AV Comment:Church of Scientology Celebrity Center Richardson, Property Security Director 323-xxxx (24/7 Security Control Room) \*\*\*DUE TO RECENT SWATTING THREATS, HAVE A SUPERVISOR RESPOND \*\*\*;*

106. The CAD record further identified the location as 5930 FRANKLIN AV and referenced "Church of Scientology Celebrity Centre Richardson, Property Security Director" and a 24/7 security control room contact number.

107. DEFENDANT VALOIS, while serving as Captain of LAPD Communications Division, implemented CAD special instructions directing that a supervisor respond or that DEFENDANT RICHARDSON, Head of Security for the CSCC and a member of the LAPD Clergy program, be contacted for calls for service occurring within a designated geographic area surrounding the CSCC.

108. The foregoing events did not occur at a Church of Scientology facility or on Scientology-owned property, but rather occurred at or near LA POUBELLE and other public locations within the LAPD Hollywood Division's jurisdiction.

109. Nevertheless, the corresponding CAD Call Incident Report specifically instructed responding officers to "contact Scientology."

110. According to CAD records obtained through Public Records Act requests covering the preceding three months, the majority of calls for service within the relevant geographic area originated from Church of Scientology security personnel.

111. PLAINTIFF alleges that directing or routing law enforcement calls for service to a private organization, namely the Church of Scientology, raises constitutional and legal concerns.

112. According to CAD Call records obtained through California Public Records Act requests, approximately 213 calls for service were recorded between December 2023 and April 2024 within the relevant geographic area.

113. Plaintiff alleges that a substantial portion of those calls originated from Church of Scientology security personnel or involved Scientology-related locations.

114. DEFENDANTS MATA, RUBALCAVA, and ALUOTTO along with DOE DEFENDANTS, arrived at the scene, where other LAPD officers were already present.

115. DOE OFFICERS effected the Private Person's Arrest of IVONE.

116. DEFENDANTS MATA and RUBALCAVA effected the Private Person's Arrest of GONZALEZ.

117. Upon observing the arrests of IVONE and GONZALEZ following the reported physical altercations, PLAINTIFF became fearful that he would also be subjected to enforcement action, left the area, and returned to his vehicle located approximately one block away.

118. DEFENDANTS MATA, RUBALCAVA, ALUOTTO, DOYLE, EMETERIO, and SALAZAR along with other LAPD officers refused to review any video footage of more than twenty picketers and instead spoke only to ROLLOLAZO, who committed multiple batteries, and CHRISTOPHER.

119. Despite the presence of numerous LAPD officers at the scene, no officer took a report from any picketer regarding the reported physical altercations or other alleged conduct.

120. It appears that no LAPD officer obtained or reviewed video footage from LA POUBELLE Bistro & Bar or neighboring businesses regarding the incident.

121. Furthermore, despite the presence of multiple picketers and witnesses who had recorded portions of the incident, no LAPD officer subsequently contacted those individuals to obtain statements or review available video evidence.

122. CHRISTOPHER, the security guard for LA POUBELLE Bistro & Bar, reported to DEFENDANT MATA that PLAINTIFF possessed a weapon. PLAINTIFF did not possess any weapon.

123. DEFENDANT MATA then broadcast over the radio that the battery suspect was possibly armed, based upon CHRISTOPHER'S report that PLAINTIFF possessed a weapon.

124. DEFENDANT MATA informed other officers that they were effectuating a Private Person's Arrest of PLAINTIFF based upon allegations of battery.

125. After turning the corner and finding no officers in sight, PLAINTIFF proceeded to his vehicle approximately one block away.

126. Upon realizing that his keys were locked inside his vehicle, PLAINTIFF decided to return to LA POUBELLE.

127. Before PLAINTIFF reached the location, LAPD officers intercepted him and placed him under arrest based upon allegations of battery arising from the earlier incident.

128. Two LAPD officers approached PLAINTIFF with firearms drawn and detained him at gunpoint.

129.    One unidentified LAPD officer aimed a handgun at PLAINTIFF and another unidentified LAPD officer aimed a shotgun at PLAINTIFF, even though PLAINTIFF immediately complied with the officers' commands and stopped.

130.    Officers grabbed PLAINTIFF's private parts two times while frisking PLAINTIFF

131.    ROLLOLAZO was then transported in an LAPD vehicle to the location where PLAINTIFF was being detained, for the purpose of conducting a field show-up identification procedure.

132.    At that time, ROLLOLAZO identified PLAINTIFF as the individual who allegedly committed the battery.

133.    This identification contradicted ROLLOLAZO'S earlier statement to Officer Ivanna Palacios, recorded in the police report, that he "did not see who grabbed him from behind."

134.    Officer Ivanna Palacios completed a police report at the scene and, within minutes, effectuated the arrest of PLAINTIFF based solely on ROLLOLAZO'S allegations.

135.    Despite the availability of additional witnesses and video evidence, Officer Palacios did not review available evidence or conduct further investigation before determining that grounds existed to arrest PLAINTIFF.

136.    No Private Person's Arrest declaration or related documentation was completed at the scene.

137.   PLAINTIFF was arrested by LAPD officers based solely on ROLLOLAZO'S statements. No officer witnessed the alleged battery or observed PLAINTIFF commit any criminal act.

138.   Minutes after the field show-up identification, DEFENDANT ALUOTTO, while speaking with DEFENDANT MATA, stated that ROLLOLAZO had reported that he "did not see who grabbed him from behind" and that the security guard intended to complete a Private Person's Arrest.

139.   CHRISTOPHER never executed or completed a Private Person's Arrest declaration, and no LAPD officer witnessed the alleged battery.

140.   Right before ROLLOLAZO identified PLAINTIFF, the police officers and Jordan stated the following:

141.   ROLLOLAZO  "Why do they have mace, dude?

142.   DEFENDANT SALAZAR "This is exactly what they do. They come here to try and agitate people and then they attack them with pepper spray."

143.   ROLLOLAZO " Yeah, that was like ridiculous. And I didn't assault anybody. That was not protesting anything with this."

144.   DEFENDANT SALAZAR "They've been a problem for a while over here."

145.   ROLLOLAZO " the guy at the door told me I'm the second person they maced tonight."

146.   DEFENDANT SALAZAR "Yeah, this is tonight. They've been doing it all week long.

147. Following the field show-up identification, DEFENDANT ALUOTTO did not take any action to address or further investigate the inconsistency between ROLLOLAZO'S identification of PLAINTIFF and ROLLOLAZO'S earlier statement that he "did not see who grabbed him from behind."

148. DEFENDANT ALUOTTO later claimed that he was unable to locate CHRISTOPHER, the security guard for LA POUBELLE Bistro & Bar, after PLAINTIFF'S arrest.

149. However, video evidence depicts CHRISTOPHER present and stationed in front of the BAR following the arrest.

150. Prior to PLAINTIFF'S arrest, DEFENDANT ALUOTTO had spoken with CHRISTOPHER, obtained his telephone number, and advised CHRISTOPHER that he would contact him if additional information was needed.

151. Following the arrests, when asked whether he wanted to declare the remaining individuals picketing at LA POUBELLE an unlawful assembly, DEFENDANT ALUOTTO replied, "No."

152. Shortly thereafter, body-worn camera footage depicts DEFENDANT ALUOTTO pointing to his own body-worn camera while gesturing toward other officers. One officer shook his head and declined to follow the gesture, after which that officer's body-worn camera remained activated, preserving additional video evidence of the incident.

153. PLAINTIFF'S vehicle was then towed for purported fingerprint processing. No fingerprints were ever taken from the vehicle. At the time it was towed, the vehicle

2ND AMENDED COMPLAINT 24

was legally parked on a public street. Upon information and belief, no other simple battery arrests handled by the Hollywood Division before or after this incident resulted in a legally parked vehicle being towed or impounded for fingerprint processing.

154.    The following day, PLAINTIFF'S vehicle was searched pursuant to a search warrant supported by an affidavit executed by DEFENDANT ALUOTTO. As set forth below, PLAINTIFF alleges that several material factual representations contained in DEFENDANT ALUOTTO'S affidavit were false, misleading, or made with reckless disregard for the truth.

155.    In the affidavit submitted in support of the search warrant, DEFENDANT ALUOTTO stated that the picketers were blocking sidewalks and harassing customers. However, no picketer was arrested for violating California Penal Code § 647(c) in connection with obstructing a sidewalk, and, upon information and belief, no picketer was made subject to a permanent civil harassment restraining order arising from the alleged conduct.

156.    DEFENDANT ALUOTTO stated in an affidavit that protesters were filming people coming and going from the restaurant and stated that their goal was to shut it down.

157.    Picketers did film for safety and to capture evidence to validate misrepresentation of their activities by the LAPD and/or patrons of the LA POUBELLE.

158.    It is both common and lawful in Hollywood, and a widely accepted practice for paparazzi to film public figures as they enter and exit restaurants and other establishments.

159.  LA POUBELLE was a known hot spot for celebrities, including but not limited to Danny Masterson, Ashton Kutcher, Mila Kunis and Ghislane Maxwell's Lawyer, Leah Saffian.

160.  DEFENDANT ALUOTTO's affidavit for search warrant never offered any evidence of PLAINTIFF conspiring with others.

161.  PLAINTIFF never shared an email, a text message, or a phone call with any of the others mentioned in the affidavit and had very limited contact with them at that point.

162.  PLAINTIFF also stated numerous times on Live-Streams that he did not like pepper spray and has never used pepper spray in his life.

163.  PLAINTIFF was initially arrested for battery and, the following morning he was rearrested for felony conspiracy and illegal use of pepper spray.

164.  Officers claimed the incident involved an unlawful assembly and that PLAINTIFF, as a purported felon, was prohibited from possessing pepper spray

165.  PLAINTIFF maintains he never used tear gas, is not a felon, and no verbal dispersal order was issued.

166.  DEFENDANT ALUOTTO also stated on body worn camera footage that the assembly was not unlawful.

167.  PLAINTIFF was deprived of his liberty and was held in custody from February 16, 2024 to February 22, 2024.

168.  On numerous occasions and without success PLAINTIFF attempted to speak with investigators at the Hollywood Police Division.

169.    PLAINTIFF was informed that DEFENDANT HALL was the assigned investigator, yet DEFENDANT HALL refused to meet or speak to PLAINTIFF during any of his numerous visits to the Hollywood Police Department.

170.    DEFENDANT HALL did, however, coordinate with Scientology, exchanging numerous emails with various members of the organization.

**E. Continuing Investigation between 2.16.24 and 5.25.24**

171.    Following PLAINTIFF's February 16, 2024 arrest, Hollywood Division officers and detectives continued investigating PLAINTIFF and other anti-Scientology protesters.

172.    PLAINTIFF alleges that Defendants continued collecting evidence, preparing investigative reports, interviewing witnesses, accepting complaints from Scientology personnel, and pursuing additional criminal investigations arising from PLAINTIFF's protected First Amendment activities.

173.    During the same period, PLAINTIFF continued to be the victim of repeated assaults and criminal conduct while participating in peaceful public demonstrations.

174.    PLAINTIFF alleges that Hollywood Division officers routinely failed to provide PLAINTIFF and other anti-Scientology protesters the same level of police protection that was routinely afforded to members and representatives of the Church of Scientology.

175.    On February 22, 2024, PLAINTIFF was battered in front of LA POUBELLE when a patron struck PLAINTIFF in the face with her purse.

176. Later that same day, a patron of LA POUBELLE threw a lit cigarette at a protester and was arrested. No followup was performed by police and by information and belief, no charges were ever filed and the victim was never contacted

177. On February 23, 2024, PLAINTIFF was the victim of an attempted theft of his approximately $1,300 cellular telephone and the suspect was arrested. No follow up was performed by detectives and they refused to contact PLAINTIFF or meet with PLAINTIFF.

178. On or about February 24, 2024, PLAINTIFF was struck by a patron of LA POUBELLE Bistro & Bar, causing PLAINTIFF'S cellular telephone to be knocked to the ground. Minutes earlier, the same patron had struck another protester's cellular telephone before fleeing the scene.

179. DEFENDANT DOUGLASS HALL responded to the incident. Plaintiff alleges that no meaningful follow-up investigation was conducted, no supplemental report was prepared, and, despite PLAINTIFF'S repeated requests, the LAPD refused on numerous occasions to meet with PLAINTIFF regarding the incident.

180. On March 8, 2024, DR No. 240600705 was opened accusing PLAINTIFF of maliciously disturbing a religious organization.

181. On March 9, 2024, DR No. 240600706 alleged PLAINTIFF maliciously disturbed a religious service at the CSCC.

182. On March 9,2024 PLAINTIFF was pushed into oncoming traffic from the sidewalk in front of LA POUBELLE by a patron leaving the bar. The police took a police report but never followed up and refused to talk to the PLAINTIFF afterwards.

183.    On March 9, 2024 A protester was struck about his body outside LA POUBELLE. DEFENDANT ALUOTTO refused to accept a private person's arrest or prepare a crime report unless the protester left the public sidewalk and accompanied officers to an unlit private parking lot on private property.

184.    Also on March 9, 2024, A protester suffered a broken nose outside LA POUBELLE. PLAINTIFF alleges the suspects entered LA POUBELLE immediately after the assault. DEFENDANT ALUOTTO entered the restaurant but shortly thereafter exited and stated the suspects were not inside. PLAINTIFF alleges the suspects later exited through the front of the restaurant and departed in an Uber without being detained or arrested.

185.    On March 10, 2024, PLAINTIFF went to Hollywood Division to inquire about the status of the batteries committed against him. Officer Ricardo Oliva advised PLAINTIFF that the investigation had been assigned to Officer Rodriguez rather than DEFENDANT HALL.

186.    On March 12, 2024, DR No. 240600704 alleged PLAINTIFF maliciously disturbed a religious meeting.

187.    On April 17, 2024, PLAINTIFF had his cell phone taken, was pushed into a table and then punched in the face resulting in a black eye outside LA POUBELLE

188.    DEFENDANTS MATA and EUBANK prepared three separate investigative reports concerning PLAINTIFF's protest activities on March 8, March 9, and March 12, 2024.

189. Each report characterized PLAINTIFF's public demonstrations as hate-crime investigations involving the Church of Scientology, identified the Church as the victim, alleged PLAINTIFF intentionally disrupted religious worship through the use of a bullhorn during public demonstrations, and documented witness interviews conducted after the events.

190. PLAINTIFF was not arrested when these reports were prepared, nor were criminal charges immediately filed. Instead, the investigations remained open for ten months.

191. In January 2025, PLAINTIFF was summoned to appear in Los Angeles Superior Court after criminal charges were filed arising from these investigations.

192. Although the investigations originated as hate-crime investigations, the prosecution ultimately proceeded on misdemeanor allegations under Penal Code § 415 and Los Angeles Municipal Code § 41.57 rather than hate-crime offenses.

193. PLAINTIFF alleges that the continuing investigations, repeated criminal accusations, selective acceptance of complaints submitted by Scientology representatives, refusal to provide PLAINTIFF and similarly situated protesters equal police protection, and repeated enforcement actions arising from PLAINTIFF's protected speech formed a continuous course of conduct that culminated in PLAINTIFF's May 25, 2024 arrest and the subsequent misdemeanor prosecutions.

**F. The May 25, 2024 Arrest**

194. On May 25, 2024, PLAINTIFF participated in a peaceful public demonstration near the CSCC and LA POUBELLE restaurant in Hollywood, California.

195.    PLAINTIFF was engaged in expressive activity, including speaking through a handheld bullhorn while protesting LA POUBELLE because both LA POUBELLE and the Scientology building across the street were playing loud amplified copyrighted music.

196.    From the outset of this date's encounter, officers already possessed printed material referencing California Penal Code 302, disturbing a religious meeting.

197.    Numerous Hollywood Division officers assembled inside the CSCC with Scientology security personnel, including DEFENDANT RICHARDSON, Head of Security and Scientology security officer DEFENDANT NICOLARSON.

198.    DEFENDANT RICHARDSON is an LAPD Clergy member.

199.    Officers met privately with Scientology representatives, reviewed Scientology surveillance videos, viewed Scientology recordings, examined Scientology photographs, discussed witness statements, and inspected signs that Scientology had placed around the property announcing that religious services were occurring.

200.    Scientology representatives offered officers additional video recordings, compact discs, and witnesses for use in the investigation, all of which officers accepted or agreed to review before making contact with PLAINTIFF.

201.    During the meeting, officers discussed securing sufficient witnesses affiliated with the Church of Scientology who would be willing to testify so that, if PLAINTIFF were arrested, he would not "get let off."

202.  Scientology representatives assured officers that witnesses would testify and assist the prosecution.

203.  Officers identified which Scientology employee would execute the private person's arrest and discussed which witnesses would be called to testify in court.

204.  DEFENDANT RICHARDSON stated that "*if we need to fly you out, I'll work that out*". Then further stating "*whatever you need to do ma'am I appreciate it.*"

205.  Although DEFENDANT NICHOLARSON was not present inside the alleged religious service and was not identified as one of the worshippers allegedly disturbed, he executed the Private Person's Arrest declaration on behalf of Scientology after meeting privately with LAPD officers.

206.  During this time there was a call to service for a California Penal Code 245 Assault with a deadly weapon that officers normally responded to code 3.

207.  This caller, known to PLAINTIFF upon information and belief to be the caller of dozens of false calls to service for LAPD and LAFD, alleged that he had a gun pulled on him.

208.  The caller made numerous 911 calls reporting that a firearm had been pointed at him and repeatedly inquired as to when responding officers would arrive.

209.  Meanwhile, after reviewing evidence provided by Church of Scientology personnel, Hollywood Division officers coordinated with Scientology members and security personnel in formulating a plan to arrest PLAINTIFF.

210.    Before approaching PLAINTIFF, body-worn camera footage captured one or more LAPD officers stating, *"We're just going to go in, scoop him up, and get out of here."*

211.    Officers further agreed that they would not explain the reason for the detention at the scene, stating: *"We're not going to sit there and talk to him and explain why we're detaining him. We'll explain all that stuff when we get to the station. The last thing we want to do is get surrounded with these clowns."*

212.    PLAINTIFF alleges that these statements demonstrate that officers had predetermined PLAINTIFF'S arrest before contacting him and before conducting an independent investigation, interviewing PLAINTIFF, or considering readily available exculpatory evidence, including witness statements and video evidence.

213.    After completing their planning meeting with Scientology personnel, officers exited the CSCC and immediately surrounded PLAINTIFF.

214.    PLAINTIFF was taken into custody pursuant to a private person's arrest initiated by Scientology.

215.    PLAINTIFF repeatedly asked officers why he was being arrested, while nearby protesters also demanded to know the basis for the arrest.

216.    Officers initially refused to explain the basis for the arrest other than stating it was a private person's arrest.

217.    During the arrest, officers twice grabbed PLAINTIFF in the crotch before placing him into the police vehicle. Plaintiff alleges that, under the circumstances, officers could

have issued a citation or otherwise employed a less intrusive means of effecting the arrest but instead chose to take PLAINTIFF into custody using unnecessary force.

218.  PLAINTIFF was transported from the scene before officers advised that the alleged offense was disturbing a religious service.

219.  PLAINTIFF alleges that officers intentionally delayed explaining the basis for the arrest in accordance with the tactical plan they had formulated moments earlier inside the Church of Scientology.

220.  Following PLAINTIFF's arrest, officers continued speaking with LA POUBELLE owner Francoise Koster.

221.  Officers informed Koster that PLAINTIFF had been arrested for disturbing a religious service under Penal Code § 302 and advised her that the arrest would assist her efforts to obtain a restraining order against PLAINTIFF.

222.  Officers further informed Koster that LAPD Captain Heredia was "very involved" with the ongoing incidents involving PLAINTIFF and Scientology.

223.  Officers also discussed PLAINTIFF's parked vehicle and whether it could be towed.

224.  PLAINTIFF was issued a notice to appear for the California Penal Code § 302 violation. When PLAINTIFF attended court, the case was not on the docket.

225.  Eight months later PLAINTIFF was issued a notice to appear and was prosecuted under Los Angeles Municipal Code section 41.57(a) and California Penal Code § 415(2).

226. PLAINTIFF alleges that these misdemeanor charges arose directly from the coordinated investigation and private person's arrest orchestrated by Scientology representatives and Hollywood Division officers.

227. PLAINTIFF further alleges that these charges became part of the same misdemeanor prosecution that was ultimately dismissed on the eve of trial.

228. PLAINTIFF alleges that the May 25, 2024 arrest was not an isolated incident but represented the culmination of the continuing pattern of retaliation, selective enforcement, unequal police protection, and coordinated law enforcement action with representatives of the Church of Scientology that began prior to PLAINTIFF's February 16, 2024 arrest and continued throughout the spring of 2024.

229. PLAINTIFF further alleges that all misdemeanor charges were ultimately dismissed on the eve of trial, demonstrating the absence of a legitimate basis for the prolonged pattern of investigation and prosecution.

**G. Current Status of the February 16, 2024 Criminal Proceedings**

230. Following PLAINTIFF's initial arrest pursuant to the Private Person's Arrest for alleged misdemeanor battery, DEFENDANT ALUOTTO directed that PLAINTIFF be re-arrested on felony allegations.

231. PLAINTIFF is informed and believes, and thereon alleges, that the official police reports specifically document DEFENDANT ALUOTTO instructing responding officers to "re-arrest" PLAINTIFF.

232.    PLAINTIFF alleges that this constituted a separate custodial seizure and investigative decision from the original Private Person's Arrest.

233.    GONZALEZ and IVONE, who had also been arrested on February 16, 2024, pursuant to Private Person's Arrests arising from the same series of events, were likewise re-arrested on allegations of conspiracy under California Penal Code § 182.

234.    However, both individuals were released from custody later that same evening.

235.    PLAINTIFF, by contrast, remained incarcerated for approximately six days following the felony re-arrest.

236.    After reviewing the matter, the Los Angeles County District Attorney declined to file the Penal Code § 182 conspiracy allegations against PLAINTIFF.

237.    PLAINTIFF alleges that the District Attorney issued a "DA Reject" determination declining prosecution of those allegations.

238.    PLAINTIFF further alleges that the District Attorney's rejection specifically reflected that PLAINTIFF had been detained rather than arrested with respect to the rejected Penal Code § 182 allegations.

239.    PLAINTIFF contends that this disposition is consistent with his position that the felony conspiracy allegations lacked sufficient legal or factual support to warrant prosecution or extended detainment.

240.    PLAINTIFF nevertheless alleges that, despite the District Attorney's rejection of the Penal Code § 182 allegations, the April 20th, 2024 follow up investigation then alleged California Penal Code § 245 charges ultimately resulting in the filing of the

currently pending felony prosecution arising from the same underlying events, including the charge of Assault with a Deadly Weapon under California California Penal Code § 245(a)(1).

241.    The felony criminal proceedings remain pending before the Los Angeles County Superior Court and have not reached a final disposition.

242.    The Court previously dismissed portions of PLAINTIFF's federal action without prejudice because of the pendency of the related state criminal proceedings.

243.    PLAINTIFF does not seek through this action to interfere with, enjoin, or invalidate the ongoing felony prosecution.

244.    Rather, PLAINTIFF includes these allegations to explain the procedural posture of the pending criminal case and to preserve those constitutional claims that are presently cognizable.

245.    PLAINTIFF further alleges that the initial Private Person's Arrest, the subsequent felony re-arrest, the District Attorney's rejection of the Penal Code § 182 allegations, and the later felony prosecution constitute distinct law enforcement actions that raise separate constitutional issues.

246.    PLAINTIFF includes these allegations to preserve his federal claims and to avoid potential prejudice arising from applicable statutes of limitation should portions of this action be dismissed while the related criminal proceedings remain pending.

247.    PLAINTIFF expressly reserves any additional claims that may accrue or become ripe upon the final resolution of the pending state criminal proceedings.

## H.    MUNICIPAL LIABILITY (MONELL) AGAINST DEFENDANT CITY OF LOS ANGELES

248.    PLAINTIFF realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

249.    At all relevant times, Defendant CITY OF LOS ANGELES, acting through the Los Angeles Police Department ("LAPD"), maintained policies, customs, practices, and longstanding patterns of conduct that were the moving force behind the constitutional violations alleged in this Complaint.

250.    The constitutional violations committed against PLAINTIFF were not isolated incidents or the result of a single officer's mistake.

251.    Rather, they resulted from longstanding customs, practices, failures to train, failures to supervise, failures to discipline, and ratification by supervisory officials within the LAPD.

252.    PLAINTIFF alleges that Hollywood Division officers routinely enforced the law differently depending upon the identity of the complaining party.

253.    Individuals associated with the Church of Scientology and LA POUBELLE routinely received prompt police assistance, acceptance of Private Person's Arrests, criminal investigations, witness interviews, evidence collection, and follow-up investigations.

254.    By contrast, PLAINTIFF and other anti-Scientology protesters repeatedly reported batteries, assaults, thefts, vandalism, threats, and other criminal conduct, yet those

complaints were routinely ignored, inadequately investigated, or declined altogether despite the availability of witnesses and video evidence.

255.   PLAINTIFF further alleges that Hollywood Division officers developed a custom and practice of selectively accepting Private Person's Arrests initiated by individuals associated with the Church of Scientology and LA POUBELLE while routinely refusing or discouraging substantially similar Private Person's Arrest requests submitted by PLAINTIFF and other protesters.

256.   PLAINTIFF alleges this unequal enforcement deprived him of the equal protection of the laws guaranteed by the Fourteenth Amendment.

257.   PLAINTIFF further alleges that the CITY maintained customs and practices permitting improper coordination between LAPD personnel and representatives of the Church of Scientology during criminal investigations involving PLAINTIFF and other protesters.

258.   As alleged throughout this Complaint, LAPD officers routinely communicated with Scientology security personnel before making enforcement decisions, reviewed Scientology-prepared evidence before conducting independent investigations, accepted investigative assistance from Scientology personnel, coordinated witness selection with Scientology representatives, relied upon Scientology personnel to initiate criminal proceedings through Private Person's Arrests, and maintained ongoing communications with Scientology representatives concerning PLAINTIFF's protest activities.

259.    On May 25, 2024, officers met privately inside the CSCC with Scientology security personnel before detaining PLAINTIFF.

260.    During that meeting, officers reviewed Scientology surveillance footage, discussed witness statements, planned PLAINTIFF's arrest, identified which Scientology representative would execute the Private Person's Arrest, discussed securing witnesses for future prosecution, and formulated the tactical plan later used to arrest PLAINTIFF.

261.    PLAINTIFF alleges these actions demonstrate far more than ordinary communication between police and witnesses; they demonstrate a custom or practice of repeatedly permitting a private organization to participate directly in governmental law-enforcement decision-making.

262.    PLAINTIFF further alleges that DEFENDANT VALOIS, while serving as Commanding Officer of the LAPD Communications Division, approved or maintained CAD special instructions directing responding officers to contact representatives of the Church of Scientology or referencing Scientology security in connection with calls occurring within the surrounding geographic area.

263.    PLAINTIFF alleges these special instructions improperly integrated a private religious organization's security apparatus into governmental dispatch and law-enforcement operations.

264.    PLAINTIFF further alleges that Public Records Act responses demonstrate that a substantial number of calls for service within the designated response area originated

from Scientology security personnel and that LAPD officers repeatedly relied upon those individuals during investigations involving PLAINTIFF and other protesters.

265. PLAINTIFF further alleges that the CITY failed to adequately train, supervise, and discipline officers regarding First Amendment protections applicable to public demonstrations, viewpoint-neutral policing, proper handling of Private Person's Arrests, preservation of exculpatory evidence, equal protection obligations, retaliatory investigations, and constitutional limitations governing arrests arising from protected expressive activity.

266. The repeated constitutional violations alleged throughout this Complaint—including multiple arrests, repeated criminal investigations, selective acceptance of complaints, refusal to investigate crimes committed against PLAINTIFF, repeated coordination with Scientology representatives, and unequal police protection—occurred over an extended period involving numerous officers, detectives, supervisors, and command personnel assigned to Hollywood Division and LAPD Communications Division.

267. PLAINTIFF further alleges that supervisory personnel had actual or constructive knowledge of these practices through repeated incidents, crime reports, body-worn camera recordings, CAD records, investigative reports, emails, complaints, Public Records Act requests, and continuing criminal investigations involving PLAINTIFF and other protesters.

268. Despite that knowledge, supervisory officials failed to intervene, failed to correct the unconstitutional practices, failed to discipline involved personnel, and instead, approved, authorized, acquiesced in, or ratified the conduct alleged herein.

269.    The CITY further ratified these unconstitutional practices by allowing repeated investigations and prosecutions to proceed despite the existence of readily available exculpatory evidence, multiple civilian witnesses, body-worn camera recordings, surveillance footage, and other evidence favorable to PLAINTIFF.

270.    PLAINTIFF alleges that these customs, policies, practices, failures to train, failures to supervise, and ratification were the moving force behind the deprivation of PLAINTIFF's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

271.    As a direct and proximate result of these municipal customs and practices, PLAINTIFF suffered unlawful seizures, retaliatory investigations, selective enforcement, unequal police protection, criminal prosecution, deprivation of liberty, emotional distress, damage to reputation, loss of property, litigation expenses, and other damages according to proof.

## I. Joint Action, Delegation of Law Enforcement Functions, and Unconstitutional Coordination with Private Actors

272.    PLAINTIFF alleges that the City of Los Angeles, acting through the Los Angeles Police Department and its employees, maintained, permitted, tolerated, or ratified customs, policies, or practices allowing private individuals and organizations to improperly influence, direct, or participate in law enforcement decisions that should have remained the independent judgment of sworn peace officers.

273.    PLAINTIFF alleges that, throughout the events described in this Complaint, officers repeatedly relied upon representatives, employees, agents, attorneys, and security

personnel associated with the Church of Scientology and LA POUBELLE in making investigative and enforcement decisions without conducting constitutionally adequate independent investigations.

274. PLAINTIFF further alleges that Defendants accepted investigative information, witness coordination, evidentiary materials, incident narratives, surveillance information, and criminal accusations supplied by private actors while disregarding readily available exculpatory evidence favorable to PLAINTIFF.

275. PLAINTIFF alleges that Defendants repeatedly afforded private actors associated with the Church of Scientology extraordinary access to law enforcement personnel and investigative processes not routinely afforded to members of the general public.

276. Upon information and belief, PLAINTIFF alleges that LAPD officers participated in pre-enforcement meetings, coordinated enforcement strategies, shared investigative information, or otherwise collaborated with representatives of the Church of Scientology concerning PLAINTIFF and other protesters before taking enforcement action.

277. PLAINTIFF further alleges that this coordination extended beyond the ordinary receipt of crime reports and constituted joint participation in governmental decision-making, including decisions regarding investigations, arrests, enforcement priorities, and the handling of PLAINTIFF's complaints.

278. PLAINTIFF alleges that, by permitting private actors to substantially influence governmental investigative and enforcement decisions, the City failed to ensure that

arrests, criminal investigations, and enforcement actions were based upon the independent judgment required by the Fourth and Fourteenth Amendments.

279.    PLAINTIFF further alleges that this custom or practice resulted in preferential treatment for complaints originating from the Church of Scientology while PLAINTIFF's complaints were routinely ignored, minimized, or inadequately investigated.

280.    PLAINTIFF alleges that the City's policymakers knew or reasonably should have known of these practices and nevertheless failed to prevent, correct, supervise, or discipline officers engaging in such unconstitutional coordination with private actors.

281.    The City's deliberate indifference to these practices constituted a moving force behind the constitutional violations alleged throughout this Complaint, including PLAINTIFF's unlawful arrests, retaliatory investigations, selective enforcement, denial of equal protection, and unreasonable searches and seizures.

282.    PLAINTIFF therefore alleges that Defendant City of Los Angeles is liable under 42 U.S.C. § 1983 because its customs, policies, practices, ratification, and deliberate indifference permitted unconstitutional joint action and the improper delegation of governmental law-enforcement functions to private actors, resulting in the deprivation of PLAINTIFF's rights under the First, Fourth, and Fourteenth Amendments.

## V. CAUSES OF ACTION

283.    PLAINTIFF pleads each Cause of Action separately to reflect the distinct constitutional violations arising from separate arrests, investigations, searches,

seizures, and municipal customs. To the extent the Court determines that any Cause of Action is not presently justiciable because of related state criminal proceedings or other procedural doctrines, PLAINTIFF expressly requests that the remaining Causes of Action proceed independently to the fullest extent permitted by law.

1. **FIRST CAUSE OF ACTION - Violation of the Fourth Amendment**

   **42 U.S.C. § 1983 – Unlawful Arrest Pursuant to Private Person's Arrest (February 16, 2024)**

   **(Against DEFENDANTS CITY OF LOS ANGELES, MATA, ALUOTTO, EMETERIO, RUBALCAVA, SALAZAR, DOYLE, and DOES 1–30)**

284.    PLAINTIFF realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

285.    The Fourth Amendment protects individuals from unreasonable seizures and arrests without probable cause.

286.    On February 16, 2024, PLAINTIFF was seized and arrested pursuant to a purported Private Person's Arrest arising from allegations made by Jordan Rollolazo.

287.    PLAINTIFF alleges that DEFENDANTS arrested him without conducting a reasonable investigation, without reviewing readily available body-worn camera footage, surveillance recordings, or civilian video recordings, and without interviewing numerous available eyewitnesses.

288.    Defendants instead relied primarily upon inconsistent accusations made after the incident despite the existence of exculpatory evidence.

289. Prior to PLAINTIFF's arrest, ROLLOLAZO informed responding officers that he did not see who allegedly grabbed him from behind. Shortly thereafter, officers conducted a field show-up during which ROLLOLAZO identified PLAINTIFF.

290. PLAINTIFF alleges that DEFENDANTS knowingly disregarded this material inconsistency and proceeded with the arrest without conducting a constitutionally adequate investigation.

291. PLAINTIFF further alleges that officers refused to investigate criminal conduct committed against PLAINTIFF and other protesters during the same incident while simultaneously accepting criminal allegations made against PLAINTIFF. No officers were present during the incident.

292. PLAINTIFF was detained at gunpoint, subjected to an unreasonable show of force, searched, transported, booked into custody, and deprived of his liberty.

293. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered loss of liberty, emotional distress, humiliation, financial loss, and other damages according to proof.

294. The actions of DEFENDANTS violated PLAINTIFF's rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

295. PLAINTIFF seeks compensatory damages, punitive damages against the individual DEFENDANTS attorney's fees pursuant to 42 U.S.C. § 1988 should counsel later appear, costs of suit, and such other relief as the Court deems just and proper.

**2. SECOND CAUSE OF ACTION - Violation of the Fourth Amendment**

**42 U.S.C. § 1983 – Unlawful Re-Arrest, Continued Seizure, False Imprisonment, and Unreasonable Detention**

**(Against DEFENDANTS CITY OF LOS ANGELES, MATA, ALUOTTO, EMETERIO, RUBALCAVA, SALAZAR, DOYLE, and DOES 1–30)**

296.    PLAINTIFF realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

297.    The Fourth Amendment to the United States Constitution protects individuals against unreasonable seizures, arrests, and continued detention without probable cause.

298.    Following PLAINTIFF's initial arrest on February 16, 2024, pursuant to a purported Private Person's Arrest for misdemeanor battery, DEFENDANT ALUOTTO directed responding officers to re-arrest PLAINTIFF on felony allegations.

299.    PLAINTIFF is informed and believes, and thereon alleges, that the official LAPD police reports specifically document DEFENDANT ALUOTTO instructing officers to "re-arrest the suspect."

300.    PLAINTIFF alleges that this re-arrest constituted a separate and distinct custodial seizure from the original Private Person's Arrest because it was based upon different criminal allegations, different investigative decisions, and different asserted legal authority.

301.    Unlike the initial arrest, which arose from a purported violation of California Penal Code section 242, the subsequent re-arrest was based upon allegations of conspiracy

under California Penal Code section 182 and alleged unlawful possession or use of tear gas under California Penal Code section 22810.

302. Following this separate felony re-arrest, PLAINTIFF remained incarcerated for approximately six days, from February 16, 2024, through February 22, 2024.

303. PLAINTIFF further alleges that GONZALEZ and IVONE were likewise re-arrested on allegations of conspiracy under California Penal Code section 182 arising from the same underlying events. However, both individuals were released from custody later that same evening.

304. PLAINTIFF, by contrast, remained incarcerated for approximately six days despite the absence of probable cause supporting the felony allegations.

305. During PLAINTIFF's continued detention, DEFENDANTS caused PLAINTIFF's vehicle to be impounded, sought and obtained a search warrant, continued their felony investigation, and pursued investigative activities that would not have occurred but for the unlawful felony re-arrest and continued detention.

306. After reviewing the matter, the Los Angeles County District Attorney declined to file the Penal Code section 182 conspiracy allegations against PLAINTIFF.

307. PLAINTIFF alleges that the District Attorney issued a formal "DA Reject" declining prosecution of those felony allegations.

308. PLAINTIFF further alleges that the District Attorney's rejection specifically reflected that PLAINTIFF had been detained rather than arrested with respect to the rejected Penal Code section 182 allegations.

309.    PLAINTIFF contends that the District Attorney's refusal to prosecute demonstrates the absence of sufficient legal and factual support for the felony conspiracy allegations upon which the re-arrest and extended detention were based.

310.    PLAINTIFF alleges that DEFENDANTS lacked probable cause to believe PLAINTIFF entered into any criminal conspiracy or otherwise violated California Penal Code section 182.

311.    PLAINTIFF further alleges that DEFENDANTS possessed no evidence that PLAINTIFF planned, directed, encouraged, or agreed with any other individual to commit an unlawful act.

312.    PLAINTIFF further alleges that DEFENDANT ALUOTTO's search warrant affidavit failed to identify facts establishing the essential elements of conspiracy and instead relied upon PLAINTIFF's protected First Amendment activities, his presence at public demonstrations, and his association with other protesters.

313.    PLAINTIFF alleges that the felony re-arrest and continued detention were objectively unreasonable under the Fourth Amendment and were undertaken without probable cause.

314.    PLAINTIFF further alleges that DEFENDANTS intentionally or recklessly disregarded readily available exculpatory evidence, including body-worn camera recordings, civilian recordings, witness statements, and physical evidence that undermined the felony allegations.

315.    PLAINTIFF further alleges that DEFENDANTS continued to detain PLAINTIFF despite the absence of probable cause and despite information known to DEFENDANTs that materially undermined the asserted felony charges.

316.    As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF suffered the loss of his liberty for approximately six days, emotional distress, humiliation, damage to his reputation, financial losses, interference with his protected First Amendment activities, and other damages according to proof.

317.    PLAINTIFF further alleges that this unlawful re-arrest and continued detention constitute a constitutional injury separate and distinct from PLAINTIFF's initial February 16, 2024, Private Person's Arrest.

318.    PLAINTIFF alleges this claim as a separate cause of action because it arose from an independent law-enforcement decision, involved different criminal allegations, resulted in a prolonged deprivation of liberty, and culminated in felony allegations that the Los Angeles County District Attorney declined to prosecute.

319.    PLAINTIFF further alleges that this separate constitutional violation is pleaded independently to preserve PLAINTIFF's federal rights and to avoid potential prejudice arising from applicable statutes of limitation should any portion of this action be dismissed, stayed, or otherwise affected by the pendency of the related state criminal proceedings.

320.    As a direct and proximate result of the foregoing conduct, DEFENDANTs, acting under color of state law, deprived PLAINTIFF of rights secured by the Fourth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983,

entitling PLAINTIFF to compensatory damages, punitive damages against the individual Defendants, costs of suit, and such other and further relief as this Court deems just and proper.

## 3. THIRD CAUSE OF ACTION - Violation of the Fourth Amendment

### 42 U.S.C. § 1983 – Unreasonable Search and Seizure of PLAINTIFF's Vehicle and Property

### (Against DEFENDANTS CITY OF LOS ANGELES, MATA, ALUOTTO, EMETERIO, RUBALCAVA, SALAZAR, DOYLE, and DOES 1–30)

321.  PLAINTIFF realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

322.  The Fourth Amendment to the United States Constitution protects individuals against unreasonable searches and seizures of their persons, vehicles, homes, papers, and effects.

323.  Following PLAINTIFF's arrest on February 16, 2024, DEFENDANTS caused PLAINTIFF's legally parked vehicle to be seized and towed from a public street under the purported justification that it would be processed for fingerprint evidence.

324.  PLAINTIFF alleges that no fingerprints were ever collected from the vehicle and that the stated justification for the tow was false, pretextual, or unsupported by any legitimate investigative necessity.

325.  PLAINTIFF further alleges that, upon information and belief, it was not the custom or ordinary practice of the LAPD Hollywood Division to tow and impound legally

parked vehicles for fingerprint processing following a misdemeanor battery investigation or a Private Person's Arrest.

326. After the vehicle was impounded, DEFENDANT ALUOTTO prepared and submitted an affidavit in support of a search warrant authorizing the search of PLAINTIFF's vehicle.

327. PLAINTIFF alleges that the affidavit contained materially false statements, misleading omissions, and reckless misrepresentations that were necessary to the finding of probable cause.

328. Among other things, PLAINTIFF alleges that DEFENDANT ALUOTTO falsely represented or implied that PLAINTIFF and other protesters were engaged in coordinated criminal conduct while failing to disclose material exculpatory information known to investigators.

329. PLAINTIFF further alleges that DEFENDANT ALUOTTO failed to present facts establishing probable cause that PLAINTIFF had entered into any criminal conspiracy or had committed any felony offense.

330. Instead, PLAINTIFF alleges that the affidavit relied substantially upon PLAINTIFF's lawful participation in public demonstrations, association with other protesters, expressive activity protected by the First Amendment, and generalized descriptions of protest activity rather than facts establishing criminal conduct.

331. PLAINTIFF further alleges that Defendants omitted material facts from the warrant application, including readily available witness statements, body-worn camera

footage, civilian video recordings, and other evidence tending to negate probable cause.

332. The warrant was thereafter executed, and PLAINTIFF's vehicle was searched pursuant to the allegedly defective warrant.

333. PLAINTIFF alleges that the seizure of his vehicle, the procurement of the search warrant, and the execution of the search were unreasonable under the Fourth Amendment because they were based upon materially false statements, material omissions, reckless disregard for the truth, and the absence of probable cause.

334. PLAINTIFF further alleges that DEFENDANTs' actions were undertaken under color of state law and were intended to further an ongoing criminal investigation that targeted PLAINTIFF because of his protected First Amendment activities.

335. As a direct and proximate result of DEFENDANTS' conduct, PLAINTIFF was deprived of the use and possession of his vehicle, suffered an unlawful invasion of his privacy, sustained damage to his possessory and property interests, incurred financial losses, and suffered emotional distress and other damages according to proof.

336. PLAINTIFF further alleges that this cause of action concerns the unconstitutional seizure and search of his property and is pleaded separately from the claims arising out of PLAINTIFF's arrests because it challenges distinct governmental actions involving the impoundment of PLAINTIFF's vehicle, the procurement of a search warrant, and the execution of that warrant.

337. As a direct and proximate result of the foregoing conduct, DEFENDANTS, acting under color of state law, violated PLAINTIFF's rights under the Fourth Amendment

to the United States Constitution, in violation of 42 U.S.C. § 1983, entitling PLAINTIFF to recover compensatory damages, punitive damages against the individual DEFENDANTS, costs of suit, and such other and further relief as the Court deems just and proper.

## 4. FOURTH CAUSE OF ACTION - Violation of the First Amendment

### 42 U.S.C. § 1983 – Retaliation for Protected Speech and Expressive Activity

### (Against DEFENDANTS CITY OF LOS ANGELES, ALUOTTO, HALL, MATA, SALAZAR, DOYLE, VELASCO and DOES 1–30)

338. PLAINTIFF realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

339. The First Amendment to the United States Constitution protects the rights of individuals to engage in peaceful protest, expressive activity, recording matters of public concern, criticizing government officials, criticizing religious organizations, and engaging in political speech in traditional public forums.

340. At all relevant times, PLAINTIFF was engaged in constitutionally protected activity by peacefully protesting on public sidewalks, livestreaming matters of public concern, documenting police activity, criticizing the Church of Scientology, reporting on matters of public interest, and advocating for police accountability.

341. PLAINTIFF's speech addressed issues of substantial public concern, including alleged misconduct by the Church of Scientology, the criminal prosecution of Danny Masterson, public corruption, public safety, and the conduct of law enforcement officers.

342.  Defendants were aware of PLAINTIFF's protected speech and expressive activities.

343.  Rather than remaining viewpoint neutral, DEFENDANTS repeatedly subjected PLAINTIFF to increased law-enforcement scrutiny because of his protected speech.

344.  Beginning in January 2024 and continuing throughout the events alleged in this Complaint, PLAINTIFF became the subject of repeated criminal investigations arising directly from his protest activities.

345.  PLAINTIFF alleges that DEFENDANTS repeatedly accepted complaints submitted by representatives of the Church of Scientology and La Poubelle while refusing to investigate numerous crimes committed against PLAINTIFF and other protesters, despite the existence of witnesses, surveillance recordings, body-worn camera footage, and civilian video evidence.

346.  PLAINTIFF further alleges that DEFENDANTS repeatedly opened criminal investigations concerning PLAINTIFF's protected expressive activity, including investigations alleging disturbance of religious services, invasion of privacy, hate-crime investigations, and other allegations arising directly from PLAINTIFF's participation in peaceful public demonstrations.

347.  PLAINTIFF alleges that Hollywood Division officers repeatedly failed to investigate batteries, assaults, thefts, vandalism, attempted thefts, and other reported crimes committed against PLAINTIFF while aggressively pursuing complaints made against PLAINTIFF by individuals associated with the Church of Scientology and LA POUBELLE.

348.    PLAINTIFF further alleges that DEFENDANTS intentionally declined to review exculpatory evidence, refused to interview available witnesses favorable to PLAINTIFF, refused to accept substantially similar Private Person's Arrest requests submitted by PLAINTIFF and other protesters, and instead devoted substantial investigative resources toward building criminal cases against PLAINTIFF.

349.    PLAINTIFF alleges that DEFENDANTS' actions would chill a person of ordinary firmness from continuing to engage in protected First Amendment activity.

350.    PLAINTIFF further alleges that DEFENDANTS' actions were substantially motivated by disagreement with PLAINTIFF's protected speech, his criticism of the Church of Scientology, his livestreaming activities, and his continued public demonstrations.

351.    PLAINTIFF alleges that this retaliatory course of conduct culminated in repeated criminal investigations, multiple arrests, prolonged criminal prosecutions, repeated seizures of PLAINTIFF's property, and continuing law-enforcement scrutiny extending throughout 2024 and into 2025.

352.    PLAINTIFF further alleges that DEFENDANTS' retaliatory conduct was a substantial or motivating factor behind the repeated investigative decisions described throughout this Complaint and was intended to discourage PLAINTIFF from continuing his protected expressive activities.

353.    As a direct and proximate result of DEFENDANTS' retaliatory conduct, PLAINTIFF suffered the deprivation of his constitutional rights, loss of liberty, emotional distress, reputational harm, financial loss, interference with his ability to continue reporting

and protesting, damage to his livestreaming activities, and other damages according to proof.

354.    The acts and omissions of DEFENDANTS, acting under color of state law, violated PLAINTIFF's rights secured by the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

355.    As a direct and proximate result of these constitutional violations, PLAINTIFF is entitled to recover compensatory damages, punitive damages against the individual DEFENDANTS, costs of suit, such attorney's fees as may become available pursuant to 42 U.S.C. § 1988, and such other and further relief as this Court deems just and proper.

## 5. FIFTH CAUSE OF ACTION - Violation of the Fourth and First Amendments

**42 U.S.C. § 1983 – Unlawful Arrest, Retaliatory Arrest, and Unreasonable Seizure (May 25, 2024)**

**(Against DEFENDANTS SALAZAR, VELASCO, CITY OF LOS ANGELES, DOES 1–30,)**

356.    **PLAINTIFF** realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

357.    This Cause of Action arises exclusively from the events of **May 25, 2024**, and is independent of the arrests, investigations, and criminal proceedings arising from the events of February 16, 2024.

358.    On May 25, 2024, PLAINTIFF was lawfully present on a traditional public forum while engaging in constitutionally protected expressive activity, including peaceful

protest, recording matters of public concern, criticizing the Church of Scientology, and livestreaming events occurring on a public sidewalk.

359. Prior to PLAINTIFF's arrest, DEFENDANTS had participated in a continuing course of conduct directed toward PLAINTIFF because of his protected speech and protest activities.

360. PLAINTIFF alleges that, before the arrest, representatives or agents of the Church of Scientology met and communicated with LAPD personnel concerning PLAINTIFF and the planned police response.

361. PLAINTIFF is informed and believes, and thereon alleges, that law enforcement officers coordinated with Scientology personnel before taking enforcement action against PLAINTIFF and relied upon information provided by Scientology representatives without conducting an independent and objective investigation.

362. PLAINTIFF further alleges that DEFENDANTS selectively accepted complaints made against PLAINTIFF while refusing to fairly investigate PLAINTIFF's own complaints and repeatedly failed to provide PLAINTIFF the equal protection of the laws.

363. On May 25, 2024, DEFENDANTS seized and arrested PLAINTIFF without probable cause or, alternatively, without conducting a constitutionally adequate investigation before depriving PLAINTIFF of his liberty.

364. PLAINTIFF alleges that DEFENDANTS failed to interview readily available witnesses favorable to PLAINTIFF, failed to review readily available video evidence,

ignored exculpatory information, and instead relied primarily upon statements provided by individuals aligned with the Church of Scientology.

365.    PLAINTIFF further alleges that DEFENDANTS arrested PLAINTIFF because of, or substantially motivated by, PLAINTIFF's protected First Amendment activities, including his criticism of the Church of Scientology, his public demonstrations, his recording of police activity, and his livestreaming of matters of public concern.

366.    A person of ordinary firmness would be deterred from engaging in protected expressive activity if subjected to repeated arrests, investigations, and criminal enforcement based upon the exercise of First Amendment rights.

367.    PLAINTIFF alleges that DEFENDANTS' conduct was objectively unreasonable under the Fourth Amendment and constituted retaliation prohibited by the First Amendment.

368.    At all relevant times, DEFENDANTS acted under color of state law and within the course and scope of their employment with the CITY..

369.    As a direct and proximate result of DEFENDANTS' actions, PLAINTIFF suffered loss of liberty, emotional distress, humiliation, reputational injury, financial damages, interference with his protected expressive activities, and other damages according to proof.

370.    PLAINTIFF further alleges that this Cause of Action is based solely upon the constitutional violations arising from the events of **May 25, 2024**, and does not depend upon the disposition of the separate criminal proceedings arising from the events of February 16, 2024.

371.    PLAINTIFF pleads this claim separately to preserve an independent basis for relief under 42 U.S.C. § 1983 should any claims arising from the February 16, 2024 incident be stayed, severed, or otherwise affected by the pendency of related state criminal proceedings.

372.    By reason of the foregoing, DEFENDANTS, acting under color of state law, violated PLAINTIFF's rights under the First and Fourth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

373.    As a direct and proximate result of these constitutional violations, PLAINTIFF is entitled to recover compensatory damages, punitive damages against the individual Defendants, costs of suit, attorney's fees pursuant to 42 U.S.C. § 1988 should counsel later appear, and such other and further relief as the Court deems just and proper.

## 6. SIXTH CAUSE OF ACTION - Violation of the Fourteenth Amendment

**42 U.S.C. § 1983 – Denial of Equal Protection Through Selective Enforcement and Selective Non-Enforcement**

**(Against DEFENDANTS CITY OF LOS ANGELES, MATA, ALUOTTO, HALL, RICHARDSON, SALAZAR,VALOIS, VELASCO, EMETERIO, EUBANK, DOYLE, and DOES 1–30)**

374.    PLAINTIFF realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

375.    The Equal Protection Clause of the Fourteenth Amendment guarantees that persons similarly situated shall be treated alike and prohibits law enforcement officers from

selectively enforcing the law based upon impermissible considerations, including the exercise of constitutional rights or viewpoint discrimination.

376. At all relevant times, PLAINTIFF was similarly situated to other individuals involved in the incidents described throughout this Complaint, including private persons seeking police assistance, individuals requesting Private Person's Arrests, victims of alleged criminal conduct, and participants in public demonstrations.

377. PLAINTIFF alleges that Defendants intentionally treated PLAINTIFF differently from similarly situated individuals without a rational basis and because of PLAINTIFF's protected First Amendment activities, viewpoint, and criticism of the Church of Scientology.

378. Throughout the events described in this Complaint, Defendants repeatedly accepted criminal complaints submitted by representatives, employees, agents, or affiliates of the Church of Scientology and LA POUBELLE while refusing to investigate or pursue comparable complaints submitted by PLAINTIFF.

379. PLAINTIFF repeatedly requested police assistance after being assaulted, battered, threatened, having property damaged, or otherwise being the victim of criminal conduct.

380. PLAINTIFF alleges that DEFENDANTS frequently refused to conduct meaningful investigations, declined to collect readily available evidence, refused to interview witnesses, declined to prepare appropriate reports, or otherwise failed to provide PLAINTIFF the same police protection routinely afforded to others.

381.    In contrast, when complaints were made against PLAINTIFF by individuals associated with the Church of Scientology or LA POUBELLE, DEFENDANTS promptly initiated criminal investigations, accepted Private Person's Arrests, gathered evidence, interviewed witnesses, sought search warrants, prepared criminal reports, and pursued criminal charges.

382.    PLAINTIFF further alleges that DEFENDANTS afforded preferential treatment to complaints originating from representatives or affiliates of the Church of Scientology by assigning greater investigative resources, giving heightened credibility to those complaints, and failing to conduct the same objective evaluation required when investigating complaints against PLAINTIFF.

383.    PLAINTIFF alleges that DEFENDANTS intentionally failed to review readily available exculpatory evidence favorable to PLAINTIFF while readily accepting inculpatory evidence offered by those aligned with the Church of Scientology and LA POUBELLE.

384.    PLAINTIFF further alleges that DEFENDANTS repeatedly declined to investigate assaults, batteries, thefts, vandalism, false reports, and other criminal conduct directed toward PLAINTIFF despite the existence of surveillance footage, civilian recordings, body-worn camera footage, eyewitness testimony, and other readily available evidence.

385.    PLAINTIFF alleges that DEFENDANTS' unequal treatment was not isolated but reflected a continuing pattern of selective enforcement and selective non-enforcement extending throughout PLAINTIFF's protest activities.

386.    PLAINTIFF further alleges that DEFENDANTS' actions lacked any rational law-enforcement justification and were motivated, at least in substantial part, by PLAINTIFF's criticism of the Church of Scientology, his public demonstrations, his recording of police activity, and his exercise of rights guaranteed by the First Amendment.

387.    As a direct and proximate result of DEFENDANTS' discriminatory enforcement practices, PLAINTIFF suffered repeated arrests, criminal investigations, deprivation of liberty, denial of police protection, emotional distress, financial loss, reputational harm, interference with his constitutional rights, and other damages according to proof.

388.    PLAINTIFF alleges that the DEFENDANT CITY OF LOS ANGELES ("CITY"), through its policymakers, supervisors, customs, practices, failures to train, failures to supervise, and ratification of unconstitutional conduct, permitted and encouraged a pattern of selective law enforcement that denied PLAINTIFF the equal protection of the laws guaranteed by the Fourteenth Amendment.

389.    By reason of the foregoing, DEFENDANTS, acting under color of state law, deprived PLAINTIFF of the equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. § 1983.

390.    As a direct and proximate result of these constitutional violations, PLAINTIFF is entitled to recover compensatory damages, punitive damages against the individual DEFENDANTS, costs of suit, attorney's fees pursuant to 42 U.S.C. § 1988 should

counsel later appear, and such other and further relief as this Court deems just and proper.

## 7. SEVENTH CAUSE OF ACTION - Municipal Liability Under 42 U.S.C. § 1983 (Monell)

### Against DEFENDANT CITY OF LOS ANGELES

391. PLAINTIFF realleges and incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

392. DEFENDANT CITY OF LOS ANGELES is a municipal entity subject to liability under 42 U.S.C. § 1983 for constitutional violations caused by its official policies, longstanding customs, widespread practices, deliberate indifference, failures to train, failures to supervise, failures to discipline, and ratification of unconstitutional conduct by final policymakers.

393. At all relevant times, the individual Defendant officers acted under color of state law and within the course and scope of their employment with the Los Angeles Police Department.

394. The constitutional violations alleged throughout this Complaint were not isolated incidents but were the foreseeable result of customs, policies, practices, and deliberate indifference maintained by the City of Los Angeles.

395. PLAINTIFF alleges that the CITY maintained customs, policies, or practices including, but not limited to:

### A. Selective Enforcement of the Law

396.    Maintaining customs or practices whereby complaints submitted by representatives, employees, agents, or affiliates of the Church of Scientology and LA POUBELLE received preferential treatment, expedited investigations, greater credibility, and enhanced law-enforcement resources, while comparable complaints submitted by PLAINTIFF were ignored, minimized, or refused.

**B. Selective Non-Enforcement**

397.    Maintaining customs or practices of refusing to investigate assaults, batteries, thefts, vandalism, false reports, and other crimes committed against PLAINTIFF despite the availability of witnesses, surveillance recordings, body-worn camera footage, civilian video recordings, and other readily available evidence.

**C. Failure to Conduct Constitutionally Adequate Investigations**

398.    Maintaining customs or practices permitting officers to make arrests and pursue criminal investigations without interviewing readily available witnesses, reviewing available body-worn camera footage, reviewing civilian recordings, or considering readily available exculpatory evidence.

**D. Improper Reliance Upon Private Parties**

399.    Maintaining customs or practices permitting LAPD officers to rely upon accusations, investigative materials, witness coordination, and information supplied by private individuals or organizations without conducting an independent law-enforcement investigation.

400.    PLAINTIFF alleges that this custom was demonstrated by repeated reliance upon complaints originating from individuals associated with the Church of Scientology while disregarding contradictory evidence.

**E. Retaliatory Enforcement Against Protected Speech**

401.    Maintaining customs or practices permitting officers to investigate, arrest, and prosecute individuals engaged in constitutionally protected protest activity because of the content or viewpoint of their speech.

402.    PLAINTIFF alleges that officers repeatedly targeted PLAINTIFF because he criticized the Church of Scientology, documented police conduct, livestreamed public events, and participated in peaceful demonstrations on public sidewalks.

**F. Failure to Train**

403.    The CITY failed to adequately train officers regarding:

- viewpoint neutrality;
- First Amendment protections applicable to protests occurring in traditional public forums;
- probable cause requirements for arrests;
- constitutionally adequate criminal investigations;
- proper handling of Private Person's Arrests;
- duties to preserve and consider exculpatory evidence;
- equal protection requirements;
- limitations on coordination with private complainants.

404.   The need for such training was obvious, and the CITY's failure to provide adequate training was deliberately indifferent to the constitutional rights of persons with whom LAPD officers would come into contact.

## G. Failure to Supervise and Discipline

405.   The CITY failed to adequately supervise, monitor, investigate, or discipline officers who engaged in unconstitutional conduct despite repeated opportunities to do so.

406.   The CITY permitted officers to continue engaging in unconstitutional practices without meaningful corrective action.

## H. Ratification

407.   Final policymakers within the Los Angeles Police Department reviewed, approved, authorized, or otherwise ratified the unconstitutional conduct described throughout this Complaint by failing to correct known constitutional violations and by approving the arrests, investigations, seizures, and prosecutions challenged herein.

408.   PLAINTIFF alleges that supervisory personnel reviewed reports, approved investigative decisions, authorized arrests, approved search warrant applications, and otherwise endorsed the actions of subordinate officers despite knowledge of material constitutional deficiencies.

## I. Deliberate Indifference

409.   The DEFENDANT CITY knew, or reasonably should have known, that its customs, practices, failures to train, failures to supervise, and failures to discipline created a substantial risk that individuals engaged in constitutionally protected protest activity

would be subjected to unlawful arrests, selective enforcement, retaliatory investigations, unreasonable searches and seizures, and unequal protection of the laws.

410. Despite that knowledge, the DEFENDANT CITY failed to take reasonable corrective action.

411. PLAINTIFF alleges that the policies, customs, practices, failures to train, failures to supervise, deliberate indifference, and ratification described herein were the moving force behind the constitutional violations alleged throughout this Complaint, including:

- PLAINTIFF's unlawful arrests;
- PLAINTIFF's unlawful re-arrest and prolonged detention;
- the unlawful seizure and search of PLAINTIFF's vehicle;
- retaliatory investigations;
- retaliatory law-enforcement actions taken because of PLAINTIFF's protected speech;
- selective enforcement and selective non-enforcement;
- denial of equal protection under the law;
- and the constitutional violations arising from the events of May 25, 2024.

412. As a direct and proximate result of these municipal customs, policies, and practices, PLAINTIFF suffered loss of liberty, unlawful searches and seizures, emotional distress, financial losses, reputational harm, interference with protected First

Amendment activity, denial of equal protection, and other damages according to proof.

413. Accordingly, DEFENDANT CITY is liable under 42 U.S.C. § 1983 and Monell v. Department of Social Services, 436 U.S. 658 (1978), because the City's official customs, policies, practices, failures to train, failures to supervise, deliberate indifference, and ratification were the moving force behind the constitutional violations suffered by PLAINTIFF.

414. PLAINTIFF respectfully requests judgment against DEFENDANT CITY for compensatory damages, declaratory relief, injunctive relief, costs of suit, attorney's fees pursuant to 42 U.S.C. § 1988 should counsel later appear, and such other and further relief as this Court deems just and proper.

## 8. EIGHTH CAUSE OF ACTION - Declaratory Relief

### 28 U.S.C. §§ 2201–2202 (Against All Defendants)

415. PLAINTIFF realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

416. An actual and present controversy exists between PLAINTIFF and Defendants concerning their respective rights and obligations under the United States Constitution and 42 U.S.C. § 1983.

417. PLAINTIFF contends that DEFENDANTS, acting under color of state law, violated and continue to violate PLAINTIFF's rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

418. DEFENDANTS deny, or are expected to deny, that their conduct was unlawful and contend that their actions were authorized, justified, privileged, or otherwise constitutional.

419. Because of these conflicting positions, an actual case or controversy exists within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

420. PLAINTIFF seeks a judicial declaration that:

A. PLAINTIFF's peaceful protest activity, livestreaming, recording of matters of public concern, criticism of the Church of Scientology, and expressive activity on public sidewalks constitute speech protected by the First Amendment.

B. Defendants violated PLAINTIFF's rights under the Fourth Amendment by subjecting PLAINTIFF to unreasonable seizures, arrests, continued detention, and unreasonable searches and seizures as alleged in this Complaint.

C. Defendants violated PLAINTIFF's rights under the First Amendment by retaliating against PLAINTIFF because of his protected speech and expressive activities.

D. Defendants violated PLAINTIFF's rights under the Fourteenth Amendment by selectively enforcing the law, selectively refusing to enforce the law, and denying PLAINTIFF the equal protection of the laws.

**E.** DEFENDANT CITY maintained, permitted, ratified, or was deliberately indifferent to customs, policies, practices, failures to train, failures to supervise, and unconstitutional coordination with private actors that were the moving force behind the constitutional violations alleged in this Complaint.

**F.** DEFENDANTS' actions, customs, policies, practices, and ratification of unconstitutional conduct violated 42 U.S.C. § 1983.

421. A judicial declaration will serve the useful purpose of clarifying and settling the legal rights of the parties and will terminate or materially reduce the controversy giving rise to this litigation.

422. Without declaratory relief, PLAINTIFF will continue to suffer uncertainty concerning his constitutional rights and the legality of DEFENDANTS' policies, customs, and practices affecting his continued participation in peaceful public demonstrations and other protected First Amendment activities.

423. PLAINTIFF therefore requests that this Court enter a declaratory judgment declaring that Defendants' conduct violated PLAINTIFF's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, together with such further declaratory relief as the Court deems just and proper.

## 9. NINTH CAUSE OF ACTION - Prospective Injunctive Relief

### 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202

### (Against Defendant CITY OF LOS ANGELES and All Defendants Acting in Their Official Capacities)

424.  PLAINTIFF realleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

425.  This action presents an actual and continuing controversy concerning the constitutional rights of PLAINTIFF and the ongoing customs, policies, practices, and conduct of Defendants.

426.  PLAINTIFF has engaged, and intends to continue engaging, in peaceful demonstrations, public advocacy, livestreaming, recording matters of public concern, and expressive activity on public sidewalks and other traditional public forums within the City of Los Angeles.

427.  PLAINTIFF alleges that the unconstitutional customs, policies, practices, failures to train, failures to supervise, ratification, and joint action with private actors described throughout this Complaint continue to present a substantial risk that PLAINTIFF will again be subjected to unconstitutional law enforcement actions while exercising his constitutional rights.

428.  Absent injunctive relief, PLAINTIFF alleges that he faces a continuing risk of retaliatory investigations, selective enforcement, unequal police protection, unlawful detention, and other constitutional deprivations while engaging in protected First Amendment activities.

429.  PLAINTIFF has no adequate remedy at law to prevent future constitutional violations arising from the City's ongoing customs, policies, and practices.

430.  Unless enjoined by this Court, PLAINTIFF alleges that DEFENDANTS will continue to enforce unconstitutional customs, policies, and practices that chill protected

speech, permit selective enforcement, and authorize unconstitutional coordination between law enforcement personnel and private actors.

431.   Accordingly, PLAINTIFF requests that this Court enter appropriate prospective injunctive relief requiring DEFENDANTS, their officers, employees, agents, successors, and all persons acting in concert with them to comply with the requirements of the United States Constitution.

432.   PLAINTIFF specifically requests that the Court issue appropriate injunctive relief prohibiting DEFENDANTS from:

A.  Retaliating against PLAINTIFF for engaging in speech protected by the First Amendment, including peaceful protest, public criticism, recording police activity, and livestreaming matters of public concern.

B.  Selectively enforcing criminal laws against PLAINTIFF because of the content or viewpoint of his protected speech.

C.  Selectively refusing to investigate crimes reported by PLAINTIFF while providing preferential law enforcement services to similarly situated private complainants.

D.  Making arrests or initiating criminal investigations without probable cause or without conducting constitutionally adequate investigations.

E.  Procuring search warrants through materially false statements, material omissions, or reckless disregard for the truth.

F.  Continuing or enforcing customs, policies, practices, or failures to train that deny individuals the equal protection of the laws guaranteed by the Fourteenth Amendment.

**G**. Permitting private parties to improperly direct, influence, or participate in governmental investigative or enforcement decisions in a manner inconsistent with the First, Fourth, and Fourteenth Amendments.

**H**. Continuing any unconstitutional customs, policies, practices, failures to train, failures to supervise, ratification, or deliberate indifference found by this Court to have caused the constitutional violations alleged in this Complaint.

433.    PLAINTIFF further requests that the Court order DEFENDANT CITY to implement constitutionally adequate policies, supervision, and training reasonably necessary to ensure compliance with the First, Fourth, and Fourteenth Amendments concerning protest activity, viewpoint neutrality, probable cause determinations, equal protection, the investigation of complaints, and the preservation and consideration of exculpatory evidence.

434.    PLAINTIFF further requests such additional equitable relief as this Court determines is necessary and appropriate to prevent future violations of PLAINTIFF's constitutional rights and to ensure Defendants' compliance with federal law.

435.    WHEREFORE, PLAINTIFF respectfully requests that this Court issue permanent injunctive relief as set forth above, together with such other and further equitable relief as the Court deems just and proper.

## VI. PRAYER FOR RELIEF

436.   **WHEREFORE**, PLAINTIFF SCOTT THOMAS HOCHSTETTER respectfully requests that judgment be entered in his favor and against Defendants, jointly and severally where permitted by law, and that this Court award the following relief:

437.   Compensatory damages in an amount according to proof for violations of PLAINTIFF's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, including damages for:

- Loss of liberty;

- False arrest and unlawful detention;

- Unreasonable searches and seizures;

- Emotional distress;

- Mental anguish;

- Humiliation;

- Embarrassment;

- Damage to reputation;

- Loss of property and possessory interests;

- Financial losses;

- Lost income and earning capacity;

- Interference with PLAINTIFF's constitutionally protected expressive activities;

- Costs incurred defending unconstitutional criminal proceedings; and

- All other damages according to proof.

438.   Punitive damages against the individual DEFENDANTS in their individual capacities in an amount sufficient to punish and deter willful, malicious, reckless, or callously indifferent violations of PLAINTIFF's constitutional rights.

439.    A declaration pursuant to 28 U.S.C. §§ 2201–2202 that DEFENDANTS' acts, omissions, customs, policies, practices, failures to train, failures to supervise, ratification of unconstitutional conduct, and joint action with private actors violated PLAINTIFF's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution.

440.    Permanent injunctive relief requiring DEFENDANTS, their officers, agents, employees, successors, assigns, and all persons acting in concert with them to cease enforcing unconstitutional customs, policies, and practices, and to comply with the requirements of the United States Constitution, including such additional equitable relief as this Court deems necessary to prevent future constitutional violations.

441.    An order requiring DEFENDANT CITY OF LOS ANGELES to implement constitutionally adequate policies, supervision, training, and oversight concerning:

- First Amendment protections applicable to public demonstrations;

- Viewpoint neutrality;

- Constitutionally adequate criminal investigations;

- Probable cause determinations;

- Proper handling of Private Person's Arrests;

- Equal protection requirements;

- Preservation and consideration of exculpatory evidence;

- Constitutional limitations on coordination with private complainants; and

- Such additional remedial measures as the Court deems appropriate.

442.    Reasonable costs of suit incurred herein.

2ND AMENDED COMPLAINT 76

443.    Reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988, should PLAINTIFF subsequently retain counsel or otherwise become entitled to such fees under applicable law.

444.    Prejudgment and post-judgment interest as permitted by law.

445.    Such other, further, and different legal or equitable relief as this Court deems just, proper, and appropriate.

## VII.  DEMAND FOR JURY TRIAL

446.    PLAINTIFF hereby demands a trial by jury on all issues so triable as a matter of right under Rule 38 of the Federal Rules of Civil Procedure.

**Respectfully submitted,**

Dated:    7/30/2026

**SCOTT THOMAS HOCHSTETTER**

PLAINTIFF, Pro SE

2ND AMENDED COMPLAINT 77